# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

**CIVIL ACTION NO. 09-231-DLB**

**BEULAH MAY MAXWELL**                                                                  **PLAINTIFF**

vs.                        **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Beulah May Maxwell applied for supplemental security income on August 10, 2007. (Tr. 84-90). At the time of filing, Plaintiff was 44 years old and alleged a disability onset date of October 20, 2006. (Tr. 84). Plaintiff alleges that she is unable to work due to degenerative disc disease of the thoracic and lumbar spine, severe thoracic kyphosis at the T8 level of the thoracic spine, central disc protrusions at the L4-5 and L5-S1 levels of the lumbar spine, anxiety and depression. (Doc. #15, 2). Her application was denied initially and again on reconsideration. (Tr. 63-71). At Plaintiff's request, an administrative hearing was conducted on November 5, 2008. (Tr. 17, 81-83). On February 20, 2009, Administrative Law Judge (ALJ) Robert L. Erwin ruled that Plaintiff was not

disabled and therefore not entitled to supplemental security income. (Tr. 9-16). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 6, 2009. (Tr. 1-3).

On July 6, 2009, Plaintiff filed the instant action. (Doc. #2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #15, 16).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity."  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since applying for benefits.  (Tr. 11).  At Step 2, the ALJ found that Plaintiff's lumbar degenerative disk disease constituted a medically severe impairment.  (Tr. 11).  However, the ALJ also found that Plaintiff's allegation of depression was not a medically severe impairment.  (Tr. 12).  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform the exertional requirements necessary for light work with no more than occasional climbing, stooping or bending.  (Tr. 13).  Furthermore, the ALJ found that Plaintiff's impairment requires her to alternate between sitting and standing for no more than thirty minutes at a time.   (Tr. 13).   In determining the Plaintiff's RFC, the ALJ

appropriately considered factors beyond the objective medical evidence in assessing the severity of Plaintiff's symptoms such as: (1) Plaintiff's daily activities; (2) the location, duration, frequency and intensity of Plaintiff's pain or other symptoms; (3) medication the Plaintiff uses to alleviate pain or other symptoms; and (4) treatment other than medication used to relieve pain or other symptoms. (Tr. 13-14). *See* 20 C.F.R. § 404.1529(c). The ALJ found that Plaintiff has no past relevant work, and, thus, the transferability of job skills was not an issue. (Tr. 14-15).

At Step 5, the ALJ found that Plaintiff was born on August 15, 1962 and was 44 years old, which is defined as a "younger person," on the date the application was filed. (Tr. 14). *See* 20 C.F.R. § 416.963. The ALJ also found that Plaintiff has a marginal education and is able to communicate in English. (Tr. 14). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 15). ALJ Erwin therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's application date of August 10, 2007. (Tr. 15).

### C. Analysis

Plaintiff raises two arguments on appeal. First, Plaintiff contends ALJ Erwin erred in rejecting the opinion of her treating physician and failing to properly weigh the evidence as required by the agency's regulations and rulings. Second, Plaintiff argues the ALJ's decision does not provide an adequate rationale for the ALJ's rejection of the opinion of her treating physician and fails to comply with the procedural requirements of the regulations. The Court will address each of these challenges in turn.

### 1. The ALJ Did Not Improperly Reject the Opinion of her Treating Physician

Plaintiff argues that the manner in which ALJ Erwin weighed the evidence was inconsistent with agency policy, and the rejection of her treating physician's opinion was improper. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); C.F.R. § 404.1527(d)(2). If the ALJ concludes that either criterion is not satisfied, he applies the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

In this case, the ALJ gave no weight to the restrictions included in the functional capacity assessment of Dr. Howard W. Lynd.[1] (Tr. 14). The restrictions set forth by Dr.

---

[1] While the ALJ found no weight would be given to Dr. Lynd's functional capacity assessment, it is important to note that the ALJ did not totally reject Dr. Lynd's conclusions. In fact, the ALJ incorporated part of Dr. Lynd's assessment regarding the Plaintiff's lifting and carrying capacity into the Plaintiff's RFC. (Tr. 14, 219).

Lynd would have prohibited Plaintiff from performing any type of work under the definitions set forth in 20 C.F.R. § 416.967(b), therefore, rendering her "disabled."[2] The ALJ found the restrictions to be "exaggerated in comparison to the objective medical evidence of record [and] inconsistent with the record as a whole . . . ." (Tr. 14).

First, the ALJ noted that Dr. Lynd's opinion that Plaintiff was incapable of participating in any substantial gainful activity was conclusory, without any explanation of the evidence he relied upon in forming that opinion. (Tr. 14). It is well settled that physicians' conclusory statements may be properly discounted by ALJs. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). Additionally, the ALJ identified that the Plaintiff's course of treatment "has not been consistent with what one would expect if the claimant were truly as disabled as Dr. Lynd has reported." (Tr. 14). Specifically, the Plaintiff simply underwent a series of sacroiliac injections and a continuation of hydrocodone for pain management, and aggressive intervention was never even considered. (Tr. 14). Furthermore, Dr. Lynd's own medical records never evidenced the severe restrictions he reported in the functional capacity assessment. Dr. Lynd's January 2007 examination of the Plaintiff found normal sensory, motor and DTR exams in the lower extremities, a negative straight leg raise test, a negative Romberg exam and normal finger to nose movements. (Tr. 176). Remarkably, in late 2007, around the same time Dr. Lynd prepared the functional capacity assessment,

---

[2] Dr. Lynd opined the Plaintiff could only sit, stand, and walk, with rests, each for less than one hour in an eight hour work day. (Tr. 219). Additionally, he opined she could never lift or carry over twenty pounds, bend, squat, crawl, climb, use either of her hands for repetitive pushing/pulling, or use either of her feet for repetitive movements in operating foot controls. (Tr. 219). Furthermore, he believed Plaintiff was totally restricted from activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automobile equipment, and exposure to dust, fumes and gases. (Tr. 219). Finally, he concluded Plaintiff could not participate in any substantial gainful activity. (Tr. 219).

6

he noted no abnormalities in Plaintiff's range of motion and muscle strength, except a decreased range of motion in the low back. (Tr. 210).

The ALJ also found Dr. Lynd's assessment inconsistent with neurosurgeon, Dr. Guy M. Sava's, opinion. (Tr. 14). In December 2006, after a thorough examination, Dr. Sava recorded Plaintiff had full range of motion in her cervical and lumbar spine with no reproduction of pain with jugular compression or Naffziger maneuvers. (Tr. 147-148). He also noted that she had normal muscle tone, motor strength and reflexes. (Tr. 147-148). Her November 6, 2006 MRI indicated central disc protrusion at L4-5 and L5-S1. (TR. 184-185). However, Dr. Sava expressly rejected the idea of aggressive treatment after reviewing her MRI. (Tr. 145-148). Plaintiff's second MRI, taken over nine months later, was essentially unchanged from the previous one. (Tr. 184-185). Furthermore, the ALJ noted that the residual functional capacity assessment of agency physician, Dr. Carlos X. Hernandez, recommending medium work, also supplemented the ALJ's RFC assessment. (Tr. 14, 234-241).

Finally, the ALJ found Plaintiff's own testimony was inconsistent with Dr. Lynd's opinion. (Tr. 14). The Plaintiff claimed to be in constant pain, yet she still participated in many daily activities "which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 14). In her Pain and Daily Activities Questionnaire dated September 5, 2007, Plaintiff answered she had no problems taking care of her own personal needs, such as bathing, shaving, and dressing. (Tr. 108-112). Additionally, she admitted to cooking, washing dishes, grocery shopping, and visiting family members outside the home. (Tr. 108-112). At the hearing, Plaintiff admitted to driving her car for about an hour each day to go to the grocery store and/or post office. (Tr. 25-26).

However, Plaintiff also changed her story at the hearing, stating that her daughter helps with most of these tasks and that her family members come to her home to visit. (Tr. 29-31). Despite the issue with Plaintiff's credibility, these activities all involve "moving around, bending over, and getting up and down at a minimum," obviously inconsistent with Dr. Lynd's restrictions. (Tr. 13-14). Furthermore, the ALJ found that the Plaintiff has never worked, which raises questions about whether her current unemployment is a result of her medical problems. (Tr. 14).

Plaintiff contends that since Dr. Lynd had the longest treatment relationship with the Plaintiff, reviewed Dr. Sava's clinical observations and test results, and was familiar with other information in her case record, his opinion should be given controlling weight. (Doc. #15, 12-13). However, these are only some of the factors that the ALJ must consider when deciding how much weight to give a treating physician's opinion. The ALJ must also look at the supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. The ALJ found that Dr. Lynd's assessment had inconsistencies, not only with other medical opinions, but also with his own treatment records. (Tr. 14). The ALJ properly pointed to other inconsistencies with the record as a whole, such as Plaintiff's conflicting testimony and her own accounts regarding her daily activities. (Tr. 13-14). Furthermore, while not explicitly stated, the ALJ recognized that Dr. Lynd was a pain management specialist, whereas Dr. Sava was a neurologist. (Tr. 11-12). Therefore, substantial evidence existed to support the ALJ's determination that Dr. Lynd's functional capacity assessment did not deserve controlling weight.

## 2. The ALJ Provided Good Reasons for the Rejection of the Opinion of her Treating Physician.

If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for his decision. *Id.; see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These reasons must be based on the evidence in the record and "'be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Even if substantial evidence otherwise supports the ALJ's decision, reversal is required if the agency fails to follow its own procedural rules. *Id.*

In a recent Sixth Circuit opinion, the Court found that the ALJ provided "good reasons" for his decision when he gave three basic reasons for not affording a treating physician's assessment controlling weight. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009). The ALJ noted that the physician's assessment was in conflict with another evaluation completed by the physician, the assessment lacked detail, and it conflicted with other evidence in the record. *Id.* As stated above, ALJ Erwin stated many specific reasons for his decision not to give controlling weight to Dr. Lynd's functional capacity assessment. The restrictions were inconsistent with Dr. Lynd's own treatment of the Plaintiff and his corresponding medical records. Additionally, Dr. Lynd's assessment conflicted with Dr. Sava's opinion that aggressive intervention is unnecessary, the agency

9

physician's assessment that Plaintiff is capable of medium work, and Plaintiff's own testimony regarding her daily activities. ALJ Erwin supported these reasons with substantial evidence from the record and, therefore, has complied with the procedural regulations that require him to provide "good reasons" for his decision.

### III.  CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that the Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #15) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #16) is hereby **GRANTED**;

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 7th day of April, 2010.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-09-231-MaxwellMoo.wpd